**CHICAGO, R. I. & G. RY. CO. v. ABDOU et al.   (No. 2102.)**

Court of Civil Appeals of Texas.  El Paso.
Dec. 15, 1927.

Rehearing Denied Jan. 5, 1928.

1. Carriers ⬅️134—Evidence held to sustain finding that carrier, sued for damage to iced car of eggs resulting from delay in transportation, did not forward car within reasonable time.

Evidence *held* sufficient to sustain finding of jury that initial carrier by rail, being sued for damage to iced car of eggs resulting from delay in transporting it from point of shipment, did not forward car within reasonable length of time.

2. Negligence ⬅️136(14)—Negligence is for jury.

Issue of negligence is peculiarly one of fact for jury.

**3. Appeal and error ⚖═996—Ordinarily, appellate courts will not disturb jury's finding as to negligence, where different conclusions may be drawn.**

Ordinarily, appellate courts will not disturb finding of jury on issue of negligence, where different conclusions may be drawn from same evidence.

**4. Carriers ⚖═132—Carrier, sued for damage to iced car of eggs, resulting from delay in transportation, had burden of showing that shipper was negligent in not billing car more promptly.**

Initial carrier by rail, being sued by consignee for damage to iced car of eggs, resulting from delay in transporting it from point of shipment, had burden of showing that shipper was negligent in not billing car more promptly than he did.

**5. Carriers ⚖═134—In suit against carrier for damage to iced car of eggs resulting from delay in transportation, evidence held to sustain finding that shipper was not negligent in not billing car more promptly.**

In suit by consignee against initial carrier by rail for damage to iced car of eggs, resulting from delay in transporting it from point of shipment, evidence *held* sufficient to sustain finding of jury that shipper was not negligent in not billing car more promptly than he did.

**6. Trial ⚖═352(5)—Special issue was properly refused, where it assumed disputed fact as to when shipper billed car.**

Requested special issue was properly refused, where it assumed that shipper delayed billing of car until certain hour, and evidence on that point was conflicting.

**7. Trial ⚖═351(5)—Special issue was properly refused, where shipper's negligence was submitted by another issue.**

Requested special issue was properly refused, where question of shipper's negligence was fairly, fully, and properly submitted by another issue.

**8. Trial ⚖═351(5)—Special issue was properly refused, where another issue, with its accompanying instruction, submitted whether carrier forwarded shipment in reasonable time.**

Requested special issue was properly refused, where another issue in the court's charge, with its accompanying instruction, fairly, fully, and properly submitted whether initial carrier by rail forwarded shipment of eggs in reasonable time.

**9. Trial ⚖═215—Special charge as to duty and liability of carrier of eggs, being general in nature, held properly refused, where case was submitted on special issues (Rev. St. 1925, art. 2189).**

Requested special charge that initial carrier by rail, being sued for damage resulting from delay in forwarding iced shipment of eggs, was not insurer against damage by deterioration due to inherent quality, and had no duty to forward shipment by any particular train or at any particular time, and had no duty to re-ice car until it reached particular station, *held* properly refused, where case was submitted on special issues, since charges general in nature as to law arising on facts are improper in cases submitted on special issues, in view of Rev. St. 1925, art. 2189.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Suit by S. N. Abdou and others against the Chicago, Rock Island & Gulf Railway Company. From a judgment in favor of plaintiffs, defendant appeals. Affirmed.

Del W. Harrington, of El Paso, for appellant.

Paul D. Thomas, of El Paso, for appellees.

HIGGINS, J. This is a suit by appellees for damages to a carload of eggs shipped from Texhoma, Okl., to El Paso, Tex. There are no facilities for icing cars at Texhoma, and the car in question was iced at a point east of Texhoma, and placed June 29th upon a siding of appellant, the initial carrier, at Texhoma, in a fully refrigerated condition, and iced to capacity, to be loaded with eggs which had been contracted for by appellees from A. E. Richwine, at Texhoma.

There is no complaint made of any delay after the car began to move, but it is asserted that before 10 a. m., on July 6th, the car was billed for shipment, at which time there was no more than enough ice in the same to carry it in proper temperature to Dalhart, the next icing point en route to El Paso, of which appellant had notice; that appellant failed to move the car in a reasonable time after it was delivered for shipment, and negligently failed to ship the car by the first available train, and delayed movement for more than 24 hours, in consequence of which the subsequent re-icing at Dalhart was ineffective for the purpose of saving and preserving the eggs, wherefore they arrived at El Paso in a damaged condition.

Appellant answered by exceptions, general denial, and special plea that the delay in the movement of the car was due to the fault of Richwine. The plea may be summarized as follows:

Richwine caused the car to be placed at Texhoma on the morning of June 29th, at which time the car was iced to capacity. Up to and including July 5th, Richwine frequently opened the car to load the eggs, on each occasion leaving it open for as much as 45 minutes. That Richwine knew the ice was rapidly melting, but made no request for additional ice. Loading was completed on the evening of July 5th, but Richwine neglected to then brace the load in the car and give billing instructions and signing a bill of lading under which the car could move to destination, and negligently withheld billing until 10 a. m. July 6th. Had Richwine billed the car and given instructions for the movement thereof on the evening of July 5th, it could

---

⚖═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

have moved out of Texhoma at 8:23 a. m. July 6th, or at 10:27 July 6th, but, due to his delay in billing, the car could not move until about 12 noon, July 7th. That the time between the billing at 10 a. m. July 6th, and the departure of the 10:27 a. m. train on that date, was not reasonably sufficient to enable appellant to place the car in the 10:27 train.

The questions submitted to the jury and findings thereon are as follows:

"Question No. 1: Did or did not the initial carrier at Texhoma, Okl., forward the carload of eggs in question in this suit in a reasonable time after it received same? Answer: It did not.

"Question No. 2: Do you find from a preponderance of the evidence that such failure to forward said eggs in a reasonable time, if said initial carrier did so fail, was the proximate cause of the damage to the eggs in question? Answer 'Yes' or 'No.' Answer: Yes.

"Question No. 3: What sum do you find from a preponderance of the evidence would fairly and reasonably compensate plaintiff for the damage, if any, resulting from such unreasonable delay in forwarding said car from Texhoma, if there was such delay? Answer: $2,814.19.

"Question No. 4: Taking into consideration all the surrounding facts and circumstances in evidence, do you find from a preponderance of the evidence that the shipper of the eggs in question was guilty of negligence in failing to bill same for shipment more promptly than he did? Answer 'Yes' or 'No.' Answer: No."

In connection with issue 1 this instruction was given:

"In connection with this question, you are charged that what is or is not a reasonable time is a pure question of fact to be solved by you in the light of all the evidence, together with all facts and circumstances surrounding the shipment."

In connection with issues 2 and 4, proper definitions were given of proximate cause and negligence.

Question 5 was submitted conditional upon an affirmative answer to No. 4.

It is asserted findings 1 and 4 are contrary to, and unsupported by, the evidence.

[1] Richwine testified:

The eggs were all in the car the night of July 5th, and the next morning he and Roy Brunton opened and packed the car not later than 7 o'clock, and about that hour advised the railroad helper the car was ready to go. "I went to the Rock Island Station and billed this car not later than 9:15 of that same morning. * .* * I went down to the station to pay the icing charge, and found said car had not been billed. As to what orders I gave as to the movement of said car—I advised the agent that the ice was getting low in the car, and asked him to move the car on the first train. I also ordered the car re-iced at Dalhart, and paid Limpert, the local agent, the charges therefor. Nothing was done with said car after said orders were given. The car was allowed to remain in the yards at Texhoma. It was twenty-six or seven hours after said orders were given

before said car was actually moved from Texhoma. * * * The eggs were not moved on first train on which they could have been moved after same were loaded and billing completed by me at Texhoma."

Appellant's assault upon the first finding is predicated upon the assumption that Richwine delayed billing the car until 10 a. m., but, if the jury believed his testimony, as they had the right to do, the car was billed by him not later than 9:15, which afforded ample time to place the car in the train which arrived at Texhoma at 10:27 on that date. This alone supports the first finding.

Appellant's station employee, Mrs. Brooks, who issued the bill of lading, testified:

She signed the bill of lading at 10 a. m. "With our office copies of the bill of lading it would not take but a few minutes to make out the waybill, and the car would be ready to be moved."

So, according to Mrs. Brooks, the car could have been made ready to move in a few minutes after the bill of lading was issued.

It is true appellant's agent testified the time between 10 o'clock and the passing of the 10:27 train was too short to waybill, seal, and report the car to the dispatcher for movement, but the jury may have preferred, and were at liberty, to believe Mrs. Brooks—that the car could have been made ready to move in a few minutes after the issuance of the bill of lading.

It is also true, as shown by the testimony of the dispatcher, that the 10:27 train was an extra double header through freight train, but so also were the 8:23 train and the train upon which the shipment finally moved the next day. The fact that it was an extra through freight train has no bearing upon the issue, in view of the fact that the other two trains were of the same character, for appellant contends the car would have moved on the 8:23 train if it had been billed the night before, and in fact it did move on the same kind of a train on July 7th.

The evidence amply supports the first finding.

[2-5] With respect to the fourth finding, it certainly cannot be said that this court would be warranted in holding that Richwine was guilty of negligence as a matter of law in not billing the car earlier than he did. The issue of negligence vel non is peculiarly one of fact for the jury, and the appellate courts ordinarily will not disturb the finding of the jury upon the issue where different conclusions may be deducted from the same evidence. The burden of showing the affirmative of issue 4 rested upon appellant. Why Richwine did not "pack" or "brace" the car when he finished loading on the night of the 5th is not shown by the evidence. It may have been because he needed the assistance of Brunton, who aided him in so doing the next morning by 7 o'clock. Appellant's of-

fice did not open until 8 a. m. It is true the agent testified there was an employee on continuous duty that could have received and billed the shipment and arranged for its movement if it had been reported ready to move during that time, but these are matters which are ordinarily transacted during the business hours of the day. Negligence on Richwine's part in delaying to bill the car until 9:15 a. m. July 6th has not been shown by appellant with that degree of conclusiveness which would warrant this court in setting aside the finding made upon issue 4.

[6, 7] Error is assigned to the refusal of special issues numbers 8 and 1, requested by appellant. No. 8 was properly refused for the reasons: First, it assumes the shipper delayed billing until 10 a. m., when Richwine had testified he billed the car not later than 9:15 a. m.; second, because the issue as to Richwine's negligence was fairly, fully, and properly submitted by issue 4. That was all that was necessary. Kirby Lbr. Co. v. Henry (Tex. Civ. App.) 224 S. W. 814.

[8] Special Issue No. 1 was also properly refused, for the reason that issue No. 1 in the court's charge, with its accompanying instruction, fairly, fully, and properly submitted the issue of whether appellant forwarded the shipment in a reasonable time after receiving same.

[9] Appellant requested special charge No. 2, which reads:

"You are instructed that the defendant carriers herein were not the insurers of the eggs shipped as against damage occurring thereto while the same were in their custody and before the delivery thereof to the plaintiffs by deterioration in the quality thereof, due in whole or in part to any inherent quality or tendency of same to decay.

"You are further instructed that the defendants, and neither thereof, were under any legal obligation or duty to forward the shipment in question by any particular train or at any particular time, but were only under the legal obligation and duty to forward the same without any unreasonable delay under all the facts and circumstances after the delivery of the shipment to the initial carrier.

"You are further instructed that, under the written instructions given by the shipper upon the bill of lading to the agent of the Chicago, Rock Island & Gulf Railway Company at Texhoma, Okl., being the initial point of such shipment, neither such defendants, nor any of the other defendants hereto, were under any obligation to re-ice such car while at Texhoma or until the same reached the station of Dalhart, Tex."

In support of its assignment complaining of the refusal of this charge, propositions are submitted to the effect:

First. The carrier cannot be held liable for deterioration or decay of the eggs due to their inherent qualities and without fault of the carrier.

Second. Under the contract of shipment as pleaded, and the evidence, the carrier cannot be held to be under any duty to move the shipment on any particular train, unless failure to do so was negligence, and the jury should have been so instructed in connection with the special issue of negligence as submitted by the court.

Third. Under the applicable tariff and contract of shipment as pleaded and put in evidence, the carrier was not only under no obligation to re-ice the car of eggs until the same reached Dalhart, Tex., but could not lawfully have done so.

Fourth. If appellant's special requested instruction No. 2, taken as a whole, or as to either one of the three paragraphs thereof, was in any respect erroneous, it as a whole, and as to each paragraph thereof was sufficient, to call the court's attention to a correct and proper charge which, under the pleadings and evidence, it was the court's duty to give, and which the court did not give to the jury as a guidance to them in the consideration of the issues submitted.

These propositions, in the abstract, may be conceded to be correct, but the charge was properly refused, for the reason, as has been repeatedly held, that in cases submitted upon special issues it is improper to submit charges general in their nature instructing the jury as to the law arising on the facts. Railway Co. v. Harrington (Tex. Com. App.) 235 S. W. 188; Humble, etc., v. McLean (Tex. Com. App.) 280 S. W. 557; Freeman v. Ry. Co. (Tex. Com. App.) 287 S. W. 902; Connellee v. Nees (Tex. Com. App.) 266 S. W. 502, and cases there cited. See, also, article 2189, R. S.

Proposition 9 presents no error, and calls for no discussion. Propositions 10 and 11 are ruled by what has already been said.

Affirmed.