**GAUSE–WARE FUNERAL HOME v. McGINLEY.**

No. 12458.

Court of Civil Appeals of Texas. Fort Worth.

May 9, 1931.

Rehearing Denied June 27, 1931.

See, also, 21 S.W.(2d) 347.

Chas. T. Rowland and P. Walter Brown, both of Fort Worth, for appellants.

McLean, Scott & Sayers, of Fort Worth, for appellee.

CONNER, C. J.

J. M. McGinley, on July 16, 1927, filed suit against the Gause-Ware Funeral Home, a copartnership composed of George L. Gause and J. M. Ware, alleging, in substance, that on February 15, 1927, he drove his Ford coupé from the east into the intersection of Throckmorton and West Third streets in the city of Fort Worth, with the intention of turning south on Throckmorton street, and, after passing the center of Throckmorton street, he held out his left hand to indicate that he was turning south, and just about the time the movement to turn was completed an ambulance owned by Gause-Ware Funeral Home, driven by an agent of said home by the name of Martin, drove said ambulance against his coupé, and that he received severe and permanent injuries as a result of the collision of said two vehicles; that he was driving his car at a very slow rate of speed, but that the ambulance was being driven in a reckless manner at a high and dangerous rate of speed; that Throckmorton street runs north and south and West Third street runs east and west; that he was free from negligence, but that the defendants and their agent and employee in charge of the ambulance were guilty of negligence in the particulars hereinafter enumerated, which was the proximate cause of his injuries received as the result of the impact of the two cars, to wit:

"(a) In operating said ambulance at said time and place at a greater rate of speed than 12 miles per hour and in violation of said section 57, title 7, Revised City Ordinances aforementioned.

"(b) In operating said ambulance upon a public street within the corporate limits of the City of Fort Worth at a greater rate of speed than 20 miles per hour in violation of positive law of the State of Texas.

"(c) In operating said ambulance at such rate of speed upon said street as to endanger the life and limb of plaintiff and the safety of his property in violation of positive law of the State of Texas.

"(d) In failing to slow down the speed of said ambulance to 15 miles per hour in attempting to pass plaintiff's automobile upon said street, all in violation of the laws of the State of Texas.

"(e) In operating said ambulance at the rate of speed at which it was traveling at said time and place in view of the conditions and circumstances existing thereat. And in operating said commercial vehicle on said public street at a greater rate of speed than 15 miles per hour in violation of state law.

"(f) In failing to sound the horn of said ambulance, or otherwise notify plaintiff of its approach and close proximity in time to have permitted plaintiff to have sought a place of safety.

"Each and all of which said acts, jointly and severally, were the direct and proximate cause of said injuries and damage as aforesaid."

Defendants urged exceptions, and, in addition to a general denial, alleged that under the laws of the state and the ordinances of the city of Fort Worth the ambulance had the right of way in the intersection of said Throckmorton and West Third streets, and that plaintiff failed to yield said right of way to said ambulance, but negligently drove his car into the intersection of said streets in defiance of said laws and ordinances, negligently turned his car in a southerly direction without giving a signal plainly visible or audible to the driver of the ambulance indicating that he was going to turn, and that said negligence of plaintiff was a proximate contributing cause of the injuries which he received as a result of the collision of said two vehicles.

The case was tried before a jury on special issues, and resulted in a verdict and judgment for plaintiff, from which judgment this appeal has been prosecuted.

■ The plaintiff alleged that "defendants had placed in charge of said motor vehicle, as their agent and employee, a man by the name of Martin, and while the said Martin was driving and operating said ambulance at a high and dangerous rate of speed," etc.,

a collision was brought about. The defendants not only presented a general demurrer, but also specially excepted to the sufficiency of the petition on the ground that it was not alleged that Martin was "at the time and place in performance of some business of the defendants."

The court overruled the special exception, and error has been assigned to the ruling. We think this assignment must be sustained. Facts not alleged, though proven, will not support a judgment. See Hall v. Jackson, 3 Tex. 305. It was certainly necessary to prove that Martin was at the particular time of the collision engaged in the performance of his employer's business. See I. & G. N. Ry. Co. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902; G., H. & S. A. Ry. Co. v. Currie, 100 Tex. 136, 96 S. W. 1073, 10 L. R. A. (N. S.) 367; Hill v. Staats (Tex. Civ. App.) 187 S. W. 1039; Van Cleave v. Walker (Tex. Civ. App.) 210 S. W. 767; Miller v. Pettigrew (Tex. Civ. App.) 10 S. W.(2d) 168; Rew v. Stoddard (Tex. Civ. App.) 225 S. W. 836; Cole v. Wright (Tex. Civ. App.) 18 S.W.(2d) 242; Langford v. El Paso Baking Co. (Tex. Civ. App.) 1 S.W.(2d) 476.

In the case of Hill v. Staats, supra, the defendant's chauffeur, after having been placed in charge of the automobile, drove the defendant's wife and children to a circus, after which, and pending the performance, he drove away on a mission of his own and ran down the plaintiff. It was held that the defendant was not liable, since at the particular time he was acting outside the scope of his employment. The other cited cases will as clearly show the insufficiency of the allegations.

■ While the witness Scott Martin, the driver of the ambulance, was testifying, he was asked that if on the day following the accident Homer Bellew did not ask him, "How in the world did you happen to hit McGinley?" and that if he (Martin) in that conversation did not reply, "I declare I don't know. I was driving down the street and the first thing I knew I was right on him." Martin denied having made the statement to Bellew as imputed, and Bellew was later permitted to testify that he did. The testimony was objected to as hearsay, but the court ruled it to be admissible in the way of impeachment of the witness. Our only reason for mentioning the subject thus presented is to call attention to the insufficiency of the bill of exception taken to the action of the court. It is evident that the statement of the witness Bellew contradicting Martin was hearsay and not admissible except as tending to impeach Martin, and whether or not it did so can only be determined by a consideration of what, if anything, the witness Martin had previously testified, and the bill of exception neither on its face nor by a refer-

ence to the statement of facts shows that Martin had at any time given testimony contradicting, or tending to contradict, his imputed statement to Bellew. See Morgan v. Stringer (Tex. Com. App.) 36 S.W.(2d) 468, 469.

Article 2237 of the Statutes prescribes the requisites of a bill of exception, and, while no particular form of words are required, it does declare that: "The objection to the ruling or action of the court shall be stated with such circumstances, or so much of the evidence as may be necessary to explain, and no more, and the whole as briefly as possible."

█ Article 2237 further provides that, where the statement of facts contains all the evidence requisite to explain the bill of exception, evidence need not be set out in the bill, but it shall be sufficient to refer to the same as it appears in the statement of facts. See opinion of this court on motion for rehearing in the case of Russell Morgan v. John Maunders, 37 S.W.(2d) 791, for a full expression of our views on this subject. However, as related to the subject we have been discussing, we think the court erred in failing to give to the jury, as defendants specially requested, an instruction that the testimony last above mentioned could only be for the sole purpose of impeachment. It is true the record discloses that the court verbally so instructed the jury at the time of the admission of the testimony, but article 2184, Rev. Statutes, provides that: "Unless expressly waived by the parties, the judge shall prepare and in open court deliver a written charge to the jury on the law of the case. * * *"

It is easily conceivable that during the course of the trial a verbal instruction of the character stated would be wholly overlooked and forgotten by a jury in the consideration of a case, and the defendants' instruction, having been in writing, should have been given. Sharman v. Newsome & Johnston, 46 Tex. Civ. App. 111, 101 S. W. 1020; Dalton v. Dalton (Tex. Civ. App.) 143 S. W. 241.

█ The case was submitted to a jury upon special issues, and the court, after giving definitions of the terms "negligence," "ordinary care," "proximate cause," and "unavoidable accident," further charged:

"The statutes of the State of Texas provide: (1) Every person operating a motor vehicle shall sound a bell, gong, horn, whistle or other device on said vehicle whenever necessary as a warning of danger. (2) Vehicles overtaking other vehicles, proceeding in the same direction shall pass to the left thereof, and shall not again drive to the right until the road is reasonably clear of such overtaken vehicle. (3) Except where controlled by local ordinances or regulations as are permitted under the law, the operator of a vehicle approaching an intersection on the pub-

lic highway shall yield the right-of-way to a vehicle approaching such intersection from the right of such first named vehicle. (4) All vehicles approaching an intersection of a public highway with the intention of turning thereat, shall, in turning to the left, run beyond the center of such intersection before turning such vehicle to the left. (5) A person in charge of any vehicle upon any highway, before turning or changing the course of such vehicle, shall see first that there is sufficient space for such movement to be made in safety, and if the movement or operation of other vehicles may reasonably be affected by such turning or changing of course, shall give plainly visible or audible signal to the person operating such vehicle of his intention to so turn or change said course.

"The ordinances of the City of Fort Worth provide that all vehicles and street cars going in a northerly or southerly direction shall have the right of way over all vehicles going in an easterly or westerly direction."

The defendants in due time and order excepted to the charge as being in the nature of a general one which should not have been given, inasmuch as the case was being submitted on special issues. We think the court erred, as assigned, in giving the charge quoted. In passing upon a similar charge, our Supreme Court, in the case of Radford Grocery Co. v. Andrews (Tex. Com. App.) 15 S.W.(2d) 218, 219, speaking through Justice Critz, said: "We are of the opinion that the charge is a general charge, and as such is clearly in violation of article 2189, R. C. S. 1925, which provides that when a case is submitted on special issues, the court shall submit only 'such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues.' The court in his main charge had already defined negligence, and ordinary care in the usual manner, and an additional charge like the one above which in general terms tells the jury the duties of persons using the streets is certainly giving a general charge."

See, also, H. & T. C. Ry. Co. v. Stribling (Tex. Civ. App.) 293 S. W. 890; T. & N. O. Ry. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188; Chicago, R. I. & G. Ry. Co. v. Abdou (Tex. Civ. App.) 1 S.W.(2d) 493.

We also question the explanatory charge given in connection with special issue No. 1, and the court's failure to define the terms "yield the right of way" and "keep a lookout," but do not think it necessary to particularly discuss the assignments relating to these matters in view of the criticisms made and the probability that they will not occur or be avoided on another trial. For the errors discussed, it is ordered that the judgment below be reversed and the cause remanded.